**UNITED STATES DISTRICT COURT**

**DISTRICT OF NEVADA**

Hector Torres,

    Plaintiff

v.

Bellagio, LLC,

    Defendant

Case No.: 2:17-cv-01025-JAD-VCF

**Order Denying Motion for Summary Judgment**

[ECF No. 46]

    Plaintiff Hector Torres worked at various dining outlets at the Bellagio for nearly 20 years before his termination in early 2016, most recently as a cook in the employee dining room. After his termination, he sued the Bellagio, alleging that he was discriminated against because of his physical disability and was terminated in retaliation for seeking an accommodation under the Americans with Disabilities Act (ADA). Bellagio now moves for summary judgment on both claims. In response, Torres withdraws his claim for ADA retaliation but opposes summary judgment for his ADA discrimination claim. Because Torres has shown there is a question of fact about the reasonableness of the accommodations he requested, I deny the Bellagio's motion and order the parties to a mandatory settlement conference.

**Background**

**A.    Torres's work at Bellagio**

    Torres began working for the Bellagio as a helper in the Le Cirque restaurant kitchen in 1998.[1] In 2013, Torres was moved from Le Cirque to Mangia, Bellagio's employee dining room.[2] This move was to accommodate Torres's need to work in a cooler environment because

---

[1] ECF No. 46-1 at 2, ¶ 3.
[2] ECF No. 46-2 at 7, ¶ 26(a).

of his diabetes and blood pressure, and his need to receive extra breaks to alleviate chronic back pain.[3]

Mangia is a cafeteria-style restaurant for Bellagio's employees to eat during their work shifts.[4] As a cook, Torres was responsible for serving food at one of the buffet stations, as well as stocking the food at his station.[5] The food at Torres's station was laid out in warming trays, called hotel pans.[6] If he ran out of an item, he would lift out the empty pan and go to the warming oven to retrieve a new pan to bring back to his serving station.[7] This required either reaching up or bending down, depending on where the pan was located in the warmer.[8] Torres would also have to get product from shelves in the kitchen's cooler, requiring either reaching or bending.[9] Torres would sometimes have to ask a coworker for help reaching items and would use carts to help move product around the kitchen.[10]

**B.   Injury and request for accommodation**

In April 2015, Torres lifted a box of squash in Mangia's cooler and injured his back.[11] He was diagnosed with lumbar strain and was issued several temporary physical restrictions, including to his ability to lift, push, pull, bend, squat, stand, walk, squat, kneel, and climb stairs

---

[3] *Id*. at ¶ 26.
[4] ECF Nos. 46-4 at 11 (Harbaugh deposition at 37:1–4), 46-8 at 24 (Torres deposition at 92:9–14).
[5] ECF No. 46-8 at 15 (Torres deposition at 54:12–24).
[6] *Id.* at 21 (Torres deposition at 80:14–17).
[7] *Id.* at 21–22 (Torres deposition at 77:15–19, 80:23–81:6).
[8] *Id.* at 21 (Torres deposition at 78:15–19).
[9] *Id.* at 20 (Torres deposition at 76:16–25).
[10] *See id.* (Torres deposition at 76:5–20).
[11] ECF No. 46-5 at 2–4.

2

or ladders.[12]  Jessica Harbaugh, Bellagio's human-resources specialist received these restrictions and found Torres temporary light-duty work while he recovered from this injury.[13]

Torres remained in light-duty positions for nearly a year.  Then, in March 2016, he was evaluated by Dr. Thomas Dunn, who found that Torres had "achieve[d] maximum medical improvement" from his 2015 injury.[14]  Dr. Dunn noted that Torres could return to full-time work but with permanent restrictions including no bending at the waist and no lifting more than 10 pounds.[15]  When Harbaugh received these restrictions, she evaluated whether Torres could return to his job at Mangia.[16]  Based on her review and communications with management, she determined that Torres could not return to his former position.[17]

## C.   The job-search process and Torres's termination

The next step was to begin the "assisted job search process," through which Torres could look for other positions in Bellagio and its sister properties that he could do with his qualifications and restrictions.[18]  In the assisted job-search program, Harbaugh meets with employees to discuss what jobs they are looking for and are qualified for.  The employees are then responsible for looking at job postings on Bellagio's online employee portal and telling Harbaugh which jobs they are interested in.  Harbaugh then compares the jobs' essential functions to the employees' restrictions to determine whether the employees can perform the

---

[12] *Id.* at 5.

[13] ECF Nos. 46-4 at 6 (Harbaugh deposition at 18:25–19:5), 46-5 at 8–9.

[14] ECF No. 46-5 at 55.

[15] *Id.* at 51.

[16] ECF No. 46-4 at 8 (Harbaugh deposition at 27:24–28:20).

[17] *Id.* (Harbaugh deposition at 35:6–13); *see also id.* at 17–18 (Harbaugh deposition at 64:19–65:2), 22 (Harbaugh deposition at 81:14–19).

[18] *Id.* at 9 (Harbaugh deposition at 29:2–16).

jobs' essential functions with or without a reasonable accommodation.[19]  While Harbaugh will assist the employee in this process, particularly with placing the employee in the open position if it is a good fit,[20] it is ultimately the employee's responsibility to review the job postings and bring positions he or she may be interested in to Harbaugh's attention.[21]

      Harbaugh initially met with Torres to begin his job search in mid-March 2016, but that meeting was cut short when Torres requested a Spanish translator.[22]  Two days later, Harbaugh met with Torres and a Spanish translator to review Torres's restrictions and the job-search process.[23]  Over the next month, Torres and Harbaugh met four more times, once a week, to review the job lists she provided for him.[24]  Harbaugh provided the job lists in English and Torres, despite not understanding English well, never requested the lists in Spanish.[25]

      Torres did not find a job he was both interested in and qualified for through the job-search process.[26]  In April 2016, he submitted another form filled out by Dr. Dunn that stated that Torres needed additional temporary physical restrictions because of a non-work-related

---

[19] *Id.* at 12 (Harbaugh deposition at 43:8–13).

[20] *Id.* at 13 (Harbaugh deposition at 46:13–47:14).

[21] *Id.* at 24 (Harbaugh deposition at 89:4–9).

[22] ECF No. 46-5 at 59.  Torres testified that he cannot hold a conversation in English and can understand very little written English, which is why he sometimes requested a translator.  ECF No. 46-8 at 27 (Torres deposition at 103:3–104:4).

[23] ECF No. 46-5 at 59.

[24] ECF No. 46-8 at 16 (Torres deposition at 58:1–59:7).

[25] *Id.* at 27 (Torres deposition at 101:21–102:1).

[26] The parties dispute why Torres failed to do so.  Torres insists that he didn't find a position because he didn't know how to search for jobs on the online employee portal and because he believed that he could return to his job at Mangia with similar accommodations.  *Id.* at 19 (Torres deposition at 69:7–70:21).  The Bellagio argues that Torres simply failed to engage in the process because he wasn't interested in positions other than his job at Mangia.  ECF No. 46 at 25.

lower-back injury.[27]  Torres's new restrictions included no frequent lifting of more than 10 pounds and limited bending, stooping, pushing, pulling, standing, and walking at will.[28]  Dr. Dunn noted that Torres was "substantially limited in working" and required a "sitting-job only."[29]  Dr. Dunn also opined that Torres may need a leave of absence of six months to one year to recover.[30]  Torres testified that he hoped giving this form to Harbaugh would lead to her ensuring that his work complied with his restrictions.[31]  Then, on April 20, Harbaugh and Torres met one last time.  At that meeting, Harbaugh told Torres that, because he couldn't perform the essential functions of his job at Mangia with or without a reasonable accommodation and because he didn't find a new job through the job-search program, he would be terminated.[32]

Torres sued Bellagio in state court and Bellagio removed his case to this court in April 2017.[33]  Torres alleges two causes of action: discrimination and retaliation in violation of the ADA.[34]  Bellagio moves for summary judgment on both claims, arguing that Torres lacks evidence to support a prima facie case for discrimination or retaliation.[35]  Torres opposes, but withdraws his retaliation claim.[36]  I therefore dismiss Torres's ADA retaliation claim and address only Torres's ADA discrimination claim.

---

[27] ECF No. 46-5 at 76.

[28] *Id.* at 76–77.

[29] *Id.* at 77.

[30] *Id.* at 78–79.

[31] ECF No. 46-8 at 18 (Torres deposition at 65:20–66:8).

[32] ECF No. 46-4 at 11 (Harbaugh deposition at 40:14–22); ECF No. 46-8 at 18–19 (Torres deposition at 68:24–69:2).

[33] ECF No. 1.

[34] ECF No. 20.

[35] ECF No. 46.

[36] ECF No. 49 at 31.

**Analysis**

**A.    Summary-judgment standard**

Summary judgment is appropriate when the pleadings and admissible evidence "show there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law."[37]  When considering summary judgment, the court views all facts and draws all inferences in the light most favorable to the nonmoving party.[38]  If reasonable minds could differ on material facts, summary judgment is not appropriate and the case must proceed to trial.[39]

If the moving party satisfies Rule 56 by demonstrating the absence of any genuine issue of material fact, the burden shifts to the party resisting summary judgment to "set forth specific facts showing that there is a genuine issue for trial."[40]  "To defeat summary judgment, the nonmoving party must produce evidence of a genuine dispute of material fact that could satisfy its burden at trial."[41]

**B.    There is a question of fact about whether Torres's requested accommodations were reasonable.**

To establish a prima facie case of discrimination under the ADA, a plaintiff must demonstrate that: (1) he is disabled within the meaning of the ADA; (2) he is a qualified individual able to perform the essential functions of the job with reasonable accommodation; and (3) he suffered an adverse employment action because of his disability.[42]

---

[37] *See Celotex Corp. v. Catrett*, 477 U.S. 317, 330 (1986) (citing Fed. R. Civ. P. 56(c)).

[38] *Kaiser Cement Corp. v. Fishbach & Moore, Inc.*, 793 F.2d 1100, 1103 (9th Cir. 1986).

[39] *Warren v. City of Carlsbad*, 58 F.3d 439, 441 (9th Cir. 1995); *see also Nw. Motorcycle Ass'n v. U.S. Dep't of Agric.*, 18 F.3d 1468, 1471 (9th Cir. 1994).

[40] *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 256 (1986); *Celotex*, 477 U.S. at 323.

[41] *Sonner v. Schwabe N. Am., Inc.*, 911 F.3d 989, 992 (9th Cir. 2018).

[42] *Samper v. Providence St. Vincent Med. Ctr.*, 675 F.3d 1233, 1237 (9th Cir. 2012).

Bellagio concedes that Torres meets the first and third elements of his prima facie case for discrimination.[43] It argues only that Torres is not a qualified individual because he cannot perform the essential functions of his job.[44] Torres responds that Bellagio engaged in no analysis to determine whether a reasonable accommodation was available that would help him perform his job's essential functions.[45]

Whether an individual is "qualified" is a two-step analysis. The first step is to determine if the individual satisfied the prerequisites for the position, such as possessing the appropriate employment experience, skills, etc.[46] The second step is to determine whether the individual can perform his job's essential functions "with or without a reasonable accommodation."[47] The first step is not contested in this case—neither party argues that Torres does not satisfy the prerequisites for the cook position. So the question is whether Torres can perform the essential functions of his job with or without a reasonable accommodation.

The parties do not dispute that the cook position's essential functions include lifting up to 50 pounds, bending, and standing. There is also no dispute about Torres's restrictions.[48] In March 2016, Torres was working under permanent restrictions including no bending at the waist

---

[43] ECF No. 46 at 18.

[44] *Id.* at 20–22.

[45] ECF No. 49 at 28–29.

[46] *Bates v. United Parcel Service, Inc.*, 511 F.3d 974, 990 (9th Cir. 2007).

[47] *Id.*

[48] While Torres objects that one of Dr. Dunn's evaluation forms is not authenticated, the 2010 amendment to Federal Rule of Civil Procedure 56 "eliminate[d] the unequivocal requirement" that evidence must be admissible in its present *form* in order to be considered at summary judgment. *Romero v. Nev. Dep't of Corr.*, 673 F. App'x 641, 644 (9th Cir. 2016). Instead, the rule mandates that the *substance* of the proffered evidence be admissible at trial. *Id.*; *see also* Fed. R. Civ. P. 56 advisory comm. note to 2010 amendment. There are multiple avenues to render the document admissible at trial, so I overrule Torres's objection at this time.

and no lifting more than 10 pounds.[49]  In April, Torres had additional restrictions, including no frequent lifting of more than 10 pounds and limited bending, stooping, pushing, pulling, and standing and walking at will.[50]  These restrictions mean that Torres cannot perform the essential functions of a cook's job without some kind of accommodation, and he does not argue that he could.

So, the question is whether Torres could perform the essential functions of a cook's job with a reasonable accommodation.[51]  Questions about whether a reasonable accommodation existed are ordinarily questions of fact to be determined by a jury.[52]  Torres argues that he had been working in Mangia for several years with the same accommodations that he asked Bellagio to formalize for him in March and April 2016.[53]  His move to Mangia was to accommodate his need for a cooler work space and he had a formal accommodation in place to receive extra breaks to alleviate back pain.[54]  But Torres testified that, during his time at Mangia, he also received assistance from his coworkers and had used a cart to help him move things that were too heavy.[55]  Bellagio argues that assistance from coworkers is not a reasonable accommodation, but the testimony of Michael Hadley, the executive chef at Mangia, supports the idea that it is common for cooks in Mangia to assist each other in completing their work.[56]  Torres also

---

[49] ECF No. 46-5 at 51.

[50] *Id.* at 75–79.

[51] *See Bates*, 511 F.3d at 994 (remanding in part because the district court "did not explicitly discuss reasonable accommodation" at the qualified-individual stage of its analysis).

[52] *EEOC v. UPS Supply Chain Solutions*, 620 F.3d 1103, 1110 (9th Cir. 2010) (citing *Lujan v. Pac. Mar. Ass'n*, 165 F.3d 738, 743 (9th Cir. 1999)).

[53] ECF No. 49 at 24.

[54] ECF No. 46-2 at 7, ¶¶ 26–28.

[55] ECF No. 46-8 at 15 (Torres deposition at 55:6–18), 20 (Torres deposition at 76:5–10).

[56] ECF No. 55-3 at 21 (Hadley deposition at 75:9–25).

repeatedly argues that he used carts in the kitchen to help him carry things that were too heavy.[57] Bellagio notes that the carts available in the kitchen were not there specifically to help Torres and sometimes were taken away from Mangia and not returned.[58] But this fact does not make it per se unreasonable to designate a cart to Torres to help him do his work in Mangia's kitchen. And to the extent that Bellagio argues that use of a cart does not eliminate Torres's need to lift things heavier than his restrictions allow, Hadley's testimony indicates that there are options for Torres like splitting cases of product into lighter parts or placing him on part of the line that is serving lighter foods that day.[59]

While some of the help Torres received may not have been an official accommodation, a previous accommodation, formal or informal, is persuasive evidence from which a jury could conclude that an accommodation is reasonable.[60] These previous informal accommodations do not render them reasonable as a matter of law,[61] but there is a question of fact here about whether the accommodations Torres requested were reasonable, particularly because he undisputedly had been receiving similar help before his formal request for accommodations. At minimum, Torres

---

[57] ECF No. 46-8 at 20 (Torres deposition at 76:5–15), 21 (Torres deposition at 77:17–19, 79:14–18).

[58] ECF No. 55-3 at 13 (Hadley deposition at 43:1–44:1).

[59] *Id.* at 14 (Hadley deposition at 47:21–48:14), 17–18 (Hadley deposition at 60:20–61:14). There is also a question of fact surrounding the actual weights of items Torres was required to lift in the course of his job. The parties reference scattered examples, but as far as I can tell from the record, there has been very little hands-on measuring of the things that Torres was expected to lift and move around the kitchen at Mangia.

[60] *Wong v. Regents of Univ. of Cal.*, 192 F.3d 807, 820 (9th Cir. 1999) ("The fact that the school previously made the exact modification . . . is certainly persuasive evidence from which a jury could conclude that the accommodation was reasonable." (citation omitted)).

[61] *Id.*

has shown there is a dispute of material fact as to whether he is a qualified individual entitled to ADA protections.[62]  I therefore deny Bellagio's motion for summary judgment.

## Conclusion

IT IS THEREFORE ORDERED that Bellagio's motion for summary judgment **[ECF No. 46] is DENIED**.  This case will proceed on Torres's ADA discrimination claim only because he has withdrawn his ADA retaliation claim.  Torres's ADA retaliation claim is dismissed.

IT IS FURTHER ORDERED that this matter is referred to the Magistrate Judge for a mandatory settlement conference.  The parties' obligation to file a pretrial order is suspended until 10 days after the settlement conference.

Dated: March 26, 2019

_____
U.S. District Judge Jennifer A. Dorsey

---

[62] This is not to say that Torres has not identified other questions of material fact about whether Bellagio engaged in the interactive process in good faith, especially considering his limited ability to understand English.  But because Torres has shown enough to survive summary judgment on one part of his sole remaining claim, I do not consider those issues in this order.